| | | |
|---|---|---|
| DISTRICT COURT, ROUTT COUNTY, STATE OF COLORADO | | DATE FILED: February 19, 2019 2:27 PM<br>FILING ID: ED877D99ED65C<br>CASE NUMBER: 2019CV30027 |
| Court Address: | Routt Combined Court<br>1955 Shield Dr., Unit 200<br>Steamboat Springs, CO  80487 | |
| **Plaintiff:** | **KRAIG W. PERRY** | |
| **Defendant:** | **UNION PACIFIC RAILROAD COMPANY,** a Delaware corporation | Δ COURT USE ONLY Δ |
| Attorney Name:<br>Address:<br><br><br>Phone Number:<br>Email:<br>Atty. Reg.#: | James L. Cox, Jr.<br>BRENT COON & ASSOCIATES, PC<br>3801 E. Florida Avenue, Suite 905<br>Denver, Colorado  80210-2500<br>(303) 756-3243<br>Jim.Cox@bcoonlaw.com<br>5977 | Case No.:  _____<br><br>Courtroom:   _____ |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Kraig W. Perry, by his attorney, James L. Cox, Jr., of BRENT COON & ASSOCIATES, PC, and by way of claim against the defendant, alleges, avers and states:

### THE PARTIES

1. Kraig W. Perry is an adult male (DOB: 08/20/1957).  Mr. Perry resides in Craig, Colorado.

2. Defendant, Union Pacific Railroad Company, is a common carrier by railroad engaged in interstate commerce in Routt County, Colorado and numerous states in the United States.  It is a Delaware corporation.  Its principal place of business is in Omaha, Nebraska.

### SALIENT FACTS

3. On November 30, 2017, and before, Plaintiff was employed by Tri-State Generation & Transmission Association, Inc. ("Tri-State").  Tri-State operates as a wholesale electric power generation and transmission cooperative.  Tri-State runs a coal-fired power plant in Craig, Colorado. Its office address is 2101 S. Ranney St., Craig, CO 81625.

4. Plaintiff was employed by Tri-State as a heavy equipment operator.

Exhibit A

5. Prior to November 30, 2017, Defendant, Union Pacific Railroad, delivered to Tri-State at its facility in Craig, Colorado, by its crew members and locomotives rail cars loaded with coal. The train of coal cars would be spotted by Union Pacific Railroad employees on tracks believed to be owned by Tri-State, for unloading by Tri-State employees.

6. Before November 30, 2017, the train of coal cars would consist of more coal cars than could be spotted on a single track at Tri-State; therefore, the coal train would be cut into two parts and spotted on two different tracks by Union Pacific Railroad employees.

7. These trains, because of the terrain, length of train, and weight of train, would be powered by locomotives at both ends of the train, connected by distributed power.

8. Distributed power ("DP") is defined by Defendant, Union Pacific Railroad Company, as "one or more locomotive consists that are remotely controlled from the lead locomotive."

9. On November 30, 2017, the Union Pacific Railroad delivered to Tri-State a train of loaded coal cars of a length that could be spotted on a single track at Tri-State. This train was also controlled by distributed power, with a locomotive or locomotives on one end of the train, and a locomotive or locomotives on the other end of the train.

10. On the morning of November 30, 2017, Plaintiff was working as the groundman. Tri-State employee Tim Ciesco was working as the engineer.

11. Plaintiff and Mr. Ciesco moved the loaded coal train through the train unloading building at Tri-State, unloading the loaded coal cars.

12. After unloading and inspecting the cars, the train was returned to the point where the Union Pacific Railroad train crew had spotted it, in a position clear of roads used by vehicles of Tri-State employees and others.

13. After lunch, and at the instructions of their supervisors, Plaintiff and Mr. Ciesco disconnected the two easternmost locomotives from the train to move several "lime cars" into position on Tri-State property. These lime cars were delivered to Tri-State by Union Pacific Railroad and spotted in their location by Union Pacific Railroad.

14. To access the lime cars with the locomotives, it was necessary for Plaintiff to guide Mr. Ciesco operating the two locomotives across two roads through a switch, then line the switch for the tracks on which the lime cars were located so Mr. Ciesco could move the locomotives to the lime cars to couple into the lime cars to relocate them.

15. As the locomotives were proceeding in the direction of the lime cars, Plaintiff, who was protecting the movement and beginning his route to the coupling point to make the

coupling with the lime cars, noticed that the coal cars coupled to locomotives on the west end of the coal car and that have been left on the original track had begun to move.

16. Plaintiff, concerned that the train may roll away without anyone controlling it, drove his truck to the train to see what he could do to stop its movement. As he approached the train, it stopped moving.

17. Given the emergency situation that Plaintiff perceived, he stepped in between the 46th and 45th cars to set the first of several handbrakes on the car, to keep the train from moving again.

18. As Plaintiff was attempting to apply the vertical wheel-style handbrake on the cars from the ground, the train moved again, striking Plaintiff, knocking Plaintiff to the ground.

19. As Plaintiff attempted to get out from in between the cars, the leading wheel of the car grabbed his right leg, ran over it, and severely injured it, resulting in the need for an above-the-knee amputation.

## PLAINTIFF'S CLAIMS

20. Trains operated by use of distributed power possess inherently dangerous properties.

21. Defendant, Union Pacific Railroad, possesses expertise in the use of trains operated by distributed power.

22. The general public, including Plaintiff and employees of Tri-State, are not able to recognize and guard against the dangerous potential of operating locomotives linked by distributed power.

23. Supplying a train operated by distributed power is an activity that poses a high risk of injury to others, especially if the duties enumerated hereinafter are not met.

## DEFENDANT UNION PACIFIC RAILROAD'S DUTIES TO PLAINTIFF, TRI-STATE, TRI-STATE EMPLOYEES AND THE PUBLIC

24. On November 30, 2017, and before, Defendant, Union Pacific Railroad, owed the following duties to Plaintiff, Tri-State, Tri-State employees, and the public:

    (a) the duty to provide locomotives reasonably safe for their intended use (*Glenn v. UPRR*, 176 P.3d 640 (Wyo. 2008)); and/or

(b)     the duty to warn foreseeable users of the locomotives of the complexities of operation of locomotives linked by distributed power (*Glenn v. UPRR*, 176 P.3d 640 (Wyo. 2008)); and/or

(c)     the duty to use reasonable care to determine that foreseeable users of locomotives linked by distributed power are competent, by experience or training, to use them (Restatement, Second, Torts § 390); and/or

(d)     the duty to use reasonable care to determine if foreseeable users of locomotives linked by distributed power may conduct themselves in the use of locomotives linked by distributed power in such a manner as to create an unreasonable risk of harm to others (Restatement, Second, Torts § 308) (Negligent entrustment) (*Casebolt v. Cowan*, 829 P.2d 352 (Colo. 1992)); and/or

(e)     the duty to exercise reasonable care to inform foreseeable users of locomotives linked by distributed power of instructions related to the operation of locomotives linked by distributed power, which make them likely to be dangerous if not known or followed (Restatement, Second, Torts § 388); and/or

(f)     the duty to use reasonable care to make the locomotives linked by distributed power safe for use by employees of Tri-State (Restatement, Second, Torts § 392, comment, (a), (b), and (d)); and/or

(g)     the duty to use reasonable care and caution in supplying a train of railcars with locomotives on each end of the train that are linked by distributed power, with knowledge that employees of Tri-State would use the locomotives to move railroad cars on the property of, and for the benefit of, Tri-State (Restatement, Second, Torts § 392); and/or

(h)     the duty to use care greater than reasonable care and caution in supplying a train of railcars with locomotives on each end of the train that are linked by distributed power, given the higher risk of injury to employees of Tri-State and/or others, when it is known to Defendant, Union Pacific Railroad Company, that employees of Tri-State would use the locomotives to move railroad cars on the property of, and for the benefit of, Tri-State (Restatement, Second, Torts § 392); and/or

(i)     the duty to use the highest possible degree of care and foresight in the inherently dangerous activity of supplying a train of railcars with locomotives on each end of the train that are linked by distributed power, given the higher risk of injury to employees of Tri-State or others, when it is known to Defendant, Union Pacific Railroad, that employees of Tri-

    State would use the locomotives to move railroad cars on the property of, and for the benefit of, Tri-State (Restatement, Second, Torts § 392); and/or

(j)  the duty to use reasonable care and caution in supplying a train of railcars with locomotives on each end of the train that are linked by distributed power, with knowledge that employees of Tri-State would use the locomotives to move railroad cars on the property of Tri-State for the benefit of Union Pacific Railroad (Restatement, Second, Torts § 391); and/or

(k)  the duty to use care greater than reasonable care and caution in supplying a train of railcars with locomotives on each end of the train that are linked by distributed power, given the higher risk of injury to employees of Tri-State and/or others, when it is known to Defendant, Union Pacific Railroad Company, that employees of Tri-State would use the locomotives to move railroad cars on the property of Tri-State for the benefit of Union Pacific Railroad (Restatement, Second, Torts § 391); and/or

(l)  the duty to use reasonable care and caution in supplying a train of railcars with locomotives on each end of the train that are linked by distributed power, with knowledge that employees of Tri-State would use the locomotives to move railroad cars on the property of Tri-State for the benefit of Union Pacific Railroad (Restatement, Second, Torts § 391); and/or

(m)  the duty to exercise that degree of care commensurate with the risk of supplying a train of railcars with locomotives on each end that are linked by distributed power (*Imperial Dist. Services v. Forrest*, 741 P.2d 1251 (1987).

## NOTICE/FORESEEABILITY

25.  It is uniquely foreseeable to Defendant that employees of industries to whom Defendant delivers trains and railcars will suffer catastrophic injuries while attempting to move or position railcars or locomotives.

A.  James D. Day was injured at or near Moapa, Nevada on November 3, 2000 while attempting to position by gravity railcars for unloading. Mr. Day was run over by the railcar and both legs crushed, resulting in bilateral below-the-knee amputation. Mr. Day was an employee of a trucking company hired by the industry to unload the cars.

B.  Steven D. Stark was injured at or near Moapa, Nevada on February 15, 2003 while attempting to position by gravity railcars for unloading. Mr.

        Stark's arm was crushed between the couplers of railcars. Mr. Stark was an employee of a trucking company hired by the industry to unload the cars.

C.      On October 19, 2005, Clinton Kelly was attempting to unload sand from railcars that had been spotted at an industry by Defendant Union Pacific Railroad. Mr. Kelly positioned himself between railcars to release the handbrake so that he would move the railcar by gravity into position to unload it. After Plaintiff released the handbrake, he went to step out from between the cars, his right foot stepped on an accumulation of sand between the rails, causing him to lose his balance. As he attempted to extricate himself from the railcar, his right forefoot was crushed, necessitating a mid-foot amputation, and his left ankle and lower leg were crushed, which resulted in a below-the-knee amputation.

D.      Other incidents which discovery will reveal.

## BREACH OF DUTY

26.      Defendant, Union Pacific Railroad, through its officers, managers, supervisors, and employees, negligently breached the duties enumerated above.

## CAUSATION

27.      As a result of Defendant, Union Pacific Railroad's, negligent breach of the duties enumerated above, Plaintiff was caused to suffer a crushing injury to his right leg which resulted in the need for an above-the-knee amputation.

## DAMAGES

28.      As a result of Defendant's negligent breach of the duties enumerated above, Plaintiff has and will in the future incur the following harms and losses:

(a)      Non-economic losses and injuries which Plaintiff has had to the present time and which Plaintiff will probably have in the future, including: physical and mental pain and suffering, inconvenience, emotional stress, impairment of quality of life, and impairment of self-esteem.

(b)      Economic losses and injuries which Plaintiff has had to the present time and which Plaintiff will probably have in the future, including: loss of earnings; damage to his ability to earn money in the future; reasonable and necessary medical, hospital and other expenses; medical devices, including prostheses.

    (c) Physical impairment and disfigurement.

 29. Defendant's conduct establishes beyond a reasonable doubt that Defendant engaged in the conduct enumerated above with an awareness of the risk and in disregard of the consequences, and/or heedlessly and recklessly without regard to the consequences or the rights and safety of Plaintiff and other employees of Tri-State.  Accordingly, Plaintiff makes claim for

   (a) Punitive damages.

 WHEREFORE, Plaintiff prays judgment against Defendant in an amount sufficient to compensate him for his general damages together with such special damages as may hereinafter be ascertained, for his costs of suit incurred herein, expert witness fees, punitive damages, interest from date of injury, and whatever other relief this honorable Court deems just and proper.

 PLAINTIFF DEMANDS A TRIAL TO A JURY OF SIX (6) ON ALL ISSUES RAISED HEREIN.

 Respectfully submitted this 19th day of February, 2019.

            BRENT COON & ASSOCIATES

            By: s/James L. Cox, Jr.
              James L. Cox, Jr. #5977
              Attorney for Plaintiff

              In accordance with C.R.C.P. 121 § 1-26(7), a printable copy of this document with original electronic signatures is being maintained by the filing party and will be made available for inspection by other parties or the court upon request.

Plaintiff's Address:
Craig, CO  81625

7